United States Court of Appeals,

Eleventh Circuit.

No. 97-8021.

Juliette IRVING, as Guardian of the Persons and Property of Bryana Bashir, and as Administratrix of the Estate of Bonita L. Irving, Deceased, Plaintiff-Appellant,

v.

MAZDA MOTOR CORP. a.k.a. Mazda Motors Corp. f.k.a. Toyo Kogyo, Ltd., Mazda (North America), Inc., et al., Defendants-Appellees.

March 5, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:94-CV-2964-HTW), Horace T. A. Ward, Judge.

Before HATCHETT, Chief Judge, and EDMONDSON and COX, Circuit Judges.

EDMONDSON, Circuit Judge:

Plaintiff appeals the district court's grant of summary judgment for Defendants. The district court decided that Plaintiff's state law claims were preempted by federal law. We conclude that Federal Motor Vehicle Safety Standard ("FMVSS") 208, 49 C.F.R. § 571.208, (enacted under the authority of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381 et seq.) does preempt Plaintiff's state law claims. And, we affirm the grant of summary judgment.

*Background*

Plaintiff Juliette Irving filed suit against Defendant Mazda Motor Corporation on behalf of her daughter, Bonita Irving. Bonita was killed in a single-car accident while driving a 1990 Mazda MX-6. After her daughter's death, Plaintiff filed this suit claiming that the seat belts in the MX-6 were defectively designed and that Mazda failed to warn consumers adequately of the risks of not utilizing all portions—particularly the manual lap belt portion—of the safety belt system.

The safety belt system used in the Mazda MX-6 included a two-point passive shoulder

restraint (automatic shoulder belt) with a manual lap belt. This kind of restraint system was one of three options provided to car manufacturers by FMVSS 208. Plaintiff contends the design represented by this option was defective.

Defendants filed a motion for summary judgment claiming that FMVSS 208 both expressly and impliedly preempts state law (including common-law) claims and that no recovery can be had on a claim based on the use of a design permitted by the federal standards. The district court granted this motion and—concluding that Plaintiff's failure-to-warn claim was dependent upon the design-defect claim—also dismissed Plaintiff's failure-to-warn claim.

*Discussion*

Whether Plaintiff's state law claims are preempted under the federal law is reviewed by this Court *de novo. Lewis v. Brunswick Corp.,* 107 F.3d 1494, 1498 (11th Cir.), *cert. granted,* --- U.S. ----, 118 S.Ct. 439, 139 L.Ed.2d 337 (1997).

*I. Preemption: Defective-Design Claim*

The Supremacy Clause of the United States' Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. Thus, state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (citing *Maryland v. Louisiana,* 451 U.S. 725, 744-46, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)). And, "common law liability may create a conflict with federal law, just as other types of state law can." *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1122 (3d Cir.1990); *see also CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662-64, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993).

Whether federal statutes or regulations preempt state law is "a question of congressional

intent." *Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257, 1261 (5th Cir.1992); *see also Medtronic, Inc. v. Lohr,* 518 U.S. 470, ---- - ----, 116 S.Ct. 2240, 2250, 135 L.Ed.2d 700 (1996) ("The purpose of Congress is the ultimate touchstone in every preemption case.") (internal quotations and citation omitted). Congress—through federal laws and regulations—may effectively preempt state law in three ways: (1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only by federal law); and (3) implied (or conflict) preemption. Defendants claim that the National Traffic and Motor Vehicle Safety Act of 1966 ("the Act") both expressly and impliedly preempts Plaintiff's state law claims.

*A. Express Preemption*

"[A] strong presumption exists against finding express preemption when the subject matter, such as the provision of tort remedies to compensate for personal injuries, is one that has traditionally been regarded as properly within the scope of the states' rights." *Taylor v. General Motors Corp.,* 875 F.2d 816, 823 (11th cir.1989)[1] (citation omitted). Thus, express preemption clauses must be construed narrowly. *Taylor,* 875 F.2d at 823-24.

Defendants first contend that Plaintiff's design-defect claim is expressly preempted by the preemption clause of the Act. That clause makes this statement:

When a motor vehicle safety standard is in effect under this chapter, a State or a political

---

[1]Our pronouncements in *Taylor* were partially abrogated by *Myrick v. Freuhauf Corp.,* 13 F.3d 1516, 1521-22 (11th Cir.1994), where we wrote that the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), would not permit an analysis of implied preemption where an express preemption clause existed in the relevant federal law. But, the Supreme Court reviewed *Myrick* on appeal and, although affirming the outcome, stressed that implied preemption is possible despite the presence of an express preemption clause. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 286-87, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995). Thus, *Taylor* is correct and can be used for evaluating preemption of state law.

subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter....

49 U.S.C. § 30103(b)(1) (formerly 15 U.S.C. § 1392(d)). But, the Act also contains a savings clause which provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e) (formerly 15 U.S.C. § 1397(k)). Thus, "[t]he question of express pre-emption is properly analyzed only after considering both § 1392(d) *and* § 1397(k)." *Pokorny,* 902 F.2d at 1120 (citing *American Textile Mfrs. Inst., Inc. v. Donovan,* 452 U.S. 490, 512-13, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981)).

In *Taylor,* after reading these two sections together, we determined that the conflict between them made the preemption of common-law claims ambiguous. Thus, the presumption against preemption controlled; and no express preemption could be found. *Taylor,* 875 F.2d at 825.

We also considered express preemption for the Federal Boat Safety Act ("FBSA"), in *Lewis v. Brunswick Corp.,* 107 F.3d 1494. The FBSA contains language similar to that of the National Traffic and Motor Vehicle Safety Act, containing both a preemption clause and a savings clause.[2]

Again we (as in *Taylor* ) read the preemption clause narrowly and said that the FBSA's preemption clause did not cover common-law claims. *Lewis,* 107 F.3d at 1501. *Taylor* and *Lewis*

---

[2]The pertinent portions of the FBSA read this way:

> [A] State or a political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under ... this title.

46 U.S.C. § 4306. The FBSA further provides that "[c]ompliance with this chapter or standards, regulations, or orders prescribed under this chapter does not relieve a person from liability at common law or under State law." 46 U.S.C. § 4311(g).

point to the same conclusion for this case.[3]  So, Plaintiff's defective-design claim is not expressly preempted by the Act.

*B. Implied Preemption*

Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lewis,* 107 F.3d at 1500 (internal quotations and citation omitted).

The existence of an express preemption clause does not necessarily preclude the presence of implied preemption. *Freightliner Corp. v. Myrick,* 514 U.S. 280, 286-90, 115 S.Ct. 1483, 1487-88, 131 L.Ed.2d 385 (1995).  Thus, if Plaintiff's state law claim conflicts with FMVSS 208 or if her claim would hinder Congress's objectives in passing the Act, the state law will be preempted.

FMVSS 208 directly addresses the kinds of restraint systems permitted to be used by car manufacturers.  It allows manufacturers to choose from three options:  (1) a complete passive restraint system (automatic seat belts with or without air bags);  (2) passive protection for frontal crashes (for example, automatic shoulder belts or air bags) plus manual lap belts for lateral crashes and rollovers with a seat belt warning system;  or (3) manual lap and shoulder belts with a seat belt warning system.  FMVSS 208;  *Perry,* 957 F.2d at 1260.

Defendants chose the second option—installing two-point passive shoulder restraints with manual lap belts.  That Congress specifically intended the standard to give manufacturers a choice should preempt common-law claims that two-point passive shoulder belts, paired with manual lap

---

[3]This conclusion is the same as that reached by other circuits.  *See, e.g., Perry,* 957 F.2d at 1264;  *Pokorny,* 902 F.2d at 1121;  *Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1989) (adopting *Wood v. General Motors Corp.*);  *Wood v. General Motors Corp.,* 865 F.2d 395, 402 (1st Cir.1988).

belts, constitute inherently a design defect. *See Pokorny,* 902 F.2d at 1123 (actual conflict exists with the Act and FMVSS 208 to the extent a claim would stand for a manufacturer's choice of an option provided by the standards).

*i. An argument made for the first time on appeal.*

As we understand the record, Plaintiff's claim in district court was not that a differently designed two-point system with a manual lap belt would have been without defect.[4] On the contrary, Plaintiff based her claim on the allegation that the option provided in the standards represented inherently a defective design. "Plaintiff allege[d] that the option selected by Mazda is defective." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 12.

Plaintiff, however, seems to argue for the first time in this appeal that different, nondefective designs could have been selected by Defendants under the same regulatory option: automatic shoulder belt with manual lap belt. Thus, Plaintiff now argues that she is not challenging Defendants' choice of a regulatory option. This argument differs from Plaintiff's argument in the district court.[5] Too often our colleagues on the district courts complain that the appellate cases about

---

[4]If a claim was asserted that two-point systems (such as that installed in the Mazda MX-6) were not defective in general, but that the specific design selected by Mazda for its two-point system was unreasonably dangerous, preemption would be less clear.

[5]The option selected by Defendants permitted passive protection for frontal crashes—either air bags or passive shoulder harnesses—plus lap belts for lateral crashes. The only alternative designs put forward by Plaintiff in the district court were three-point seat belts, fully automatic belts, and restraint systems with more elaborate warning systems. These alternatives do not fall within the regulatory option exercised by Defendants. A three-point seat belt system would have to be either fully passive (for example, the seat belt is attached to the car door and is positioned upon closing the door) or fully manual (requiring passenger action to position the restraint), which would place that system in either of the two options not selected by Defendants. The option exercised by Defendants allowed for a partially passive, partially manual restraint system. For the same reason, a fully automatic belt system also would not fall under the same option selected by Defendants. Finally, the warning systems proposed by Plaintiff would have been different from the warning system specifications set out for the option selected by Defendants, with which specifications Defendants undisputably complied.

which they read were not the cases argued before them. We cannot allow Plaintiff to argue a different case from the case she presented to the district court. Because Plaintiff failed to make this argument in the district court, we decline to consider it here. *See Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994).

*ii. The argument made in district court.*

When considering implied preemption, no presumption exists against preemption. "Under the Supremacy Clause of the Federal Constitution, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Lewis,* 107 F.3d at 1502 (citation omitted).

Because Plaintiff sued Defendants for exercising an option explicitly permitted by Congress, a conflict exists between state and federal law if Plaintiff goes forward with this state law claim of defective design. *Taylor,* 875 F.2d at 827 ("[A] state cannot impose common law damages on individuals for doing what a federal act or regulation "authorized them to do.' ") (quoting *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 318-20, 101 S.Ct. 1124, 1131, 67 L.Ed.2d 258 (1981)). Therefore, Plaintiff's suit against Defendants for their exercise of an option provided to Defendants by FMVSS 208 conflicts with federal law and, thus, is preempted.

*II. Failure-to-Warn Claim*

In addition to granting Defendants' motion for summary judgment on Plaintiff's claim of

---

In the district court, Plaintiff stated that she was "not suggesting that the options be taken away; rather, Plaintiff alleges that *the option selected by Mazda is defective.*" Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 12 (emphasis added). To sharpen this point more, Plaintiff went so far as to challenge the appropriateness of FMVSS 208. *See id.* at 2 ("[A]lthough the restraint system may comply with the minimum standards, the standards are inadequate and should not impede the progress towards improved designs.").

defective design, the district court also dismissed Plaintiff's failure-to-warn claim. The district court said that "[s]ince plaintiff's defective design claims are preempted, the court will not address plaintiff's failure to warn claim, *as it is premised on a defective design.*" District Court Order at 8 n.8 (emphasis added).

Plaintiff argues on appeal that a failure-to-warn claim is separate from and not dependent upon a defective-design claim. As a general statement of law, Plaintiff's proposition is often correct. *See, e.g., Michael v. Norfolk Southern Ry. Co.,* 74 F.3d 271 (11th Cir.1996) (applying Georgia law); *see also Sheckells v. AGV-USA Corp.,* 987 F.2d 1532, 1533 (11th Cir.1993) (applying Georgia law); *Stapleton v. Kawasaki Heavy Indus., Ltd.,* 608 F.2d 571, 572-73 (5th Cir.1979) (applying Georgia law). But, in this case Plaintiff (not the district court or Defendants) tied the claims of defective design and failure to warn together. In Plaintiff's opposition to Defendants' motion for summary judgment, she argued that she would ask the jury to find that "the 1990 Mazda MX-6 equipped with the two-point motorized shoulder belt and manual lap belt option is defective without plaintiff's desired warning."[6] Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 23.

Because Plaintiff's defective-design claim is preempted by FMVSS 208, there was no defect about which to warn. Plaintiff's failure-to-warn claim—which is, in this case, dependent on the preempted defective-design claim—was properly dismissed.

AFFIRMED.

---

[6]Plaintiff presented several warning systems as safer alternatives to the system present in the 1990 Mazda. The Mazda warning system included a buzzer, a light indicating a failure to secure the lap belt, and a written warning on the sun visors on both the driver and passenger sides of the car. Plaintiff alleges these warnings were inadequate. But, Plaintiff does not dispute that the warnings provided in the 1990 Mazda fully complied with the federal standards. *See* FMVSS 208 at S7.3; 49 C.F.R. § 571.208, S.5.