**Celestine BARNES, Plaintiff**

v.

**ASTRAZENECA PHARMACEU-TICALS LP and AstraZeneca LP, Defendants**

**CIVIL ACTION NO. 1:17–CV–142–ODE**

United States District Court,
N.D. Georgia, Atlanta Division.

Signed 05/22/2017

Filed 05/23/2017

Roger W. Orlando, The Orlando Firm, P.C., Decatur, GA, for Plaintiff.

Amy K. Fisher, Katherine D. Althoff, Ice Miller, LLP, Indianapolis, IN, James Joseph Freebery, IV, Makenzie Windfelder, McCarter & English, LLP, Wilmington, DE, Christopher B. Freeman, Justan Caleaf Bounds, Carlton Fields, PA, Atlanta, GA, for Defendants.

## ORDER

ORINDA D. EVANS, UNITED
STATES DISTRICT JUDGE

This products liability action is presently before the Court on Defendants Astrazeneca Pharmaceuticals LP and AstraZeneca LP's ("AstraZeneca") Motion to Dismiss Plaintiff Celestine Barnes' ("Plaintiff") First Amended Complaint [Doc. 25]. Plaintiff has responded in opposition [Doc. 26] and AstraZeneca has replied [Doc. 31]. For the reasons stated below, AstraZeneca's motion to dismiss is granted, and with prejudice.

### I. Background

On January 12, 2017, Plaintiff filed the instant case against AstraZeneca for kidney injuries allegedly sustained as a result of taking the prescription drug Nexium [Doc. 1]. AstraZeneca subsequently moved to dismiss this first complaint for failure to state a claim upon which relief may be granted [Doc. 7], a motion which this Court dismissed as moot after Plaintiff filed her First Amended Complaint [Doc. 16]. That latter complaint is now the operative document before the Court [Doc. 12].

Of the 154 paragraphs comprising that First Amended Complaint, very few contain facts or allegations directly pertaining to Plaintiff herself.[1] Of those that do pertain to Plaintiff, the Court has gleaned that she ingested "Nexium as prescribed and/or directed by her physician starting in 2006" [id. ¶ 6] and that "[u]pon information and belief, Plaintiff ... was diagnosed with Acute Kidney Injury in 2015 as a result of her use of the aforementioned Nexium" [id. ¶ 8]. Nevertheless, to avoid the two-year statute of limitations in Georgia, Plaintiff alleges that she was actually unaware "of the connection between the use of Proton Pump Inhibitors [like Nexium] and chronic kidney disease until April of 2016" [id. ¶ 99], the year after her diagnosis supposedly "as a result" of her use of Nexium.

The remainder of Plaintiff's First Amended Complaint is filled with mostly irrelevant and immaterial information about AstraZeneca, Nexium, proton pump inhibitors ("PPIs"), studies linking PPIs to kidney complications, and the various ways in which AstraZeneca allegedly violated the Federal Food, Drug, and Cosmetic Act. Eventually, after incorporating by reference all 100 of these preceding paragraphs, Plaintiff reaches her claims: negligence [id. ¶ 100]; strict products liability [id. ¶ 107]; breach of express and implied warranties [id. ¶¶ 124, 136] ; and fraudulent misrepresentation and omission [id. ¶ 144]. These claims arise out of a single point—"Plaintiff was not aware of the connection between the use of Proton Pump Inhibitors and chronic kidney disease until April of 2016" and, prior to that time, "Plaintiff did not have access to, or actually receive any studies or information ... or have any discussions with her [d]octor" about such a connection [Id. ¶¶ 99–100].

AstraZeneca filed its motion to dismiss this First Amended Complaint on April 19, 2017 [Doc. 25]. Plaintiff responded in opposition on May 3, 2017 [Doc. 26], and AstraZeneca replied on May 17, 2017 [Doc. 31].

### II. Deficiencies in Form

Initially, there are two preliminary bases for dismissal with prejudice: Plaintiff's failure to adequately respond to AstraZ-

---

1. Judge Jones recently granted a motion to dismiss with prejudice in an almost-identical, parallel case, Thornton v. AstraZeneca Pharmaceuticals LP, 1:17–CV–653–SCJ, 2017 WL 2255776 (N.D. Ga. May 15, 2017) (Doc. 22).

In his order, Judge Jones confirmed AstraZeneca's assertion to this Court that, but for the individual plaintiffs' names, the complaints in each of these two cases differ by a mere six words. Id. at 10.

eneca's motion to dismiss and the "shotgun" nature of her First Amended Complaint.

First, as AstraZeneca argues in its reply, Plaintiff's response in opposition to its motion to dismiss was entirely nonresponsive. After labeling AstraZeneca's motion "abusive and vexing" [Doc. 26 at 2], Plaintiff simply restated elements of her First Amended Complaint and reminded the Court of the legal standard for motions to dismiss. "When an argument is raised upon [a] motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." Cornelius v. JPMorgan Chase Bank, N.A., No. 1:15-CV-3394-ELR-LTW, 2016 WL 7468811, at *3 (N.D. Ga. July 21, 2016) (Walker, Mag. J.) (citing, e.g., Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1326 (11th Cir. 2000)), approved and adopted by 2016 WL 7507521, at *1 (N.D. Ga. Aug. 10, 2016) (Ross, J.). It is the duty of the parties and not that of this Court to formulate arguments in opposition to reasonable motions, and conclusory language that Plaintiff has "clearly" shown the elements of her claims does not count. Plaintiff's failure to seriously defend her own First Amended Complaint is thus arguably fatal to her claim.

Second, Plaintiff's First Amended Complaint constitutes 154 paragraphs of particularly egregious "shotgun pleading." "A complaint is a shotgun complaint where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" Brazil v. Janssen Research & Dev. LLC, No. 4:15-CV-204-HLM, 249 F.Supp.3d 1321, 1336, 2016 WL 4844442, at *8 (N.D. Ga. Mar. 24, 2016) (Murphy, J.) (quoting Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996)). The evidence of shotgun pleading

here is prolific. Principally, Plaintiff incorporates all previous 100 paragraphs of largely immaterial information at the beginning of each of her five claims against AstraZeneca [Doc. 12 ¶¶ 101, 107, 124, 136, 144]. See id. ("According to the [United States Court of Appeals for the] Eleventh Circuit, 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint' is '[t]he most common type' of shotgun pleading[ ]." (citation omitted)). As to Plaintiff's strict products liability claim more specifically, her First Amended Complaint incorporates all three different types of strict liability into this single count without any attempt to distinguish among them [Doc. 12 ¶¶ 107–23]. See id. (defining "shotgun pleading" as one which "'lumps multiple claims together in one count and, moreover, appears to support a specific, discrete claim with allegations that are immaterial to that claim'" (citation omitted)).

Finally, and perhaps most egregiously, Plaintiff fails to identify specific defendant(s) and thus to give them "adequate notice of the claims against them and the grounds upon which each claim rests." Id. (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015)). While the First Amended Complaint names two specific entities as defendants—AstraZeneca Pharmaceuticals LP and AstraZeneca LP—Plaintiff also includes:

> ... their affiliates, subsidiaries, alteregos, and/or joint venturers who are responsible for designing, researching, developing, testing, manufacturing, packaging, labeling, marketing, promoting, distributing, and/or selling proton pump

inhibitors ("PPI"s), including but not limited to Nexium

[Doc. 12 ¶ 1]. She goes on:

Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint-venturers, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf

[Id. ¶ 16]. The only reasonable conclusion for this Court to draw from this manner of pleading is that Plaintiff does not know who or what she is in fact suing. Nonetheless, she considers every one of these entities to be a defendant to each of her causes of action, although they could not possibly be on notice of the claim(s) against them.

## III. Deficiencies in Substance

Even if this Court were to reach the merits of Plaintiff's individual claims, her First Amended Complaint must be dismissed for failure to state a claim upon which relief may be granted. To survive a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level," and "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true Plaintiff's legal conclusions, including those couched as factual allegations, Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Particularly important is the requirement that a complaint contain enough factual allegations to provide " 'fair notice' of the nature of the claim" and the " 'grounds' on which the claim rests." Twombly, 550 U.S. at 555 n.3, 127 S.Ct. 1955.

AstraZeneca alleges that dismissal under Rule 12(b) (6) is proper in this case because Plaintiff has simply failed to meet the pleading standard, and the Court agrees. The First Amended Complaint contains five claims, and the Court will consider each below. Furthermore, the Court notes that Plaintiff appears not to know what law applies to her claims, as evidenced by her pleading negligence "in the broadest sense available under law to include pleading same pursuant to all substantive law that applies to this case as may be determined by choice of law principles, regardless of whether arising under statute and/or common law" [Doc. 12 ¶ 102]. Nonetheless, given that Plaintiff "is and was at all times alleged herein a citizen of the State of Georgia" [id. ¶ 4], the Court will assume that her injury occurred here and that Georgia law applies to this diversity action.

### A. Negligence

The required elements of negligence in Georgia are as follows: "(1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection be-

tween the breach and the injury." Goodson v. Bos. Sci. Corp., No. 1:11–CV–3023–TWT, 2011 WL 6840593, at *3 (N.D. Ga. Dec. 29, 2011) (Thrash, J.) (citing Vaughan v. Glymph, 241 Ga.App. 346, 348, 526 S.E.2d 357 (Ga. Ct. App. 1999)). Plaintiff claims that AstraZeneca owed her "a duty to manufacture, compound, label, market, distribute, and supply and/or sell their PPI in such a way as to avoid harm" [Doc. 12 ¶ 103]. She then alleges that AstraZeneca breached these duties in numerous ways, providing a generalized list of twenty-seven means by which one might evidence

> carelessness, recklessness, negligence, gross negligence and willful, wanton, outrageous and reckless disregard for human life and safety in manufacturing, designing, labeling, marketing, distributing, supplying, selling and/or placing into the stream of commerce their proton pump inhibitor Nexium

[Id. ¶ 105]. Plaintiff then pleads "kidney injuries" "[a]s a direct and proximate result" [Id. ¶ 106].

Even assuming, arguendo, that listing every conceivable form of duty and breach that might apply in this case meets the requirements for pleading, Plaintiff cannot establish causation. Proximate cause requires that Plaintiff "show a legally attributable causal connection between the defendant's conduct and the alleged injury." Barrett Props., LLC v. Roberts Capitol, Inc., 316 Ga.App. 507, 509, 729 S.E.2d 621 (Ga. Ct. App. 2012) (citation omitted). "A mere possibility of such causation is not enough[,]" and "when the matter remains one of pure speculation or conjecture," causation is not present. Id. In this case, Plaintiff has "fail[ed] to identify any causal connection between any specific act or omission" and her alleged "kidney injuries." See Henderson v. Sun Pharms. Indus., Ltd., 809 F.Supp.2d 1373, 1380 (N.D. Ga. 2011) (Murphy, J.). She may "list[ ] numerous duties, Defendants, acts or omissions, and injuries," but without "alleg[ing]

any relationship between a specific Defendant, a specific breach, and a specific injury[,]" her First Amended Complaint must fail. See id.

It may indeed be true that research suggests that PPIs like Nexium contribute to kidney injuries, but this is only proof of so-called "general causation." Plaintiff also has the burden of showing "specific causation"—the connection between the drug and the plaintiff's actual injury." Swicegood v. Pliva, Inc., No. 1:07-CV-1681-TWT, 2010 WL 1138455, at *3 (N.D. Ga. Mar. 22, 2010) (Thrash, J.). This task is complicated by Plaintiff's apparent confusion as to what her injury is. She initially pleads a diagnosis of "Acute Kidney Injury," "[u]pon information and belief," although it is unclear why she would not know this for a fact [Doc. 12 ¶ 8]. See Tamanji v. Nationstar Mortg. LLC, No. 4:14-CV-222-HLM, 2014 WL 12513893, at *2 (N.D.) (Murphy, J.) (noting that " '[s]ince the seminal decisions in Twombly and Iqbal, 'for purposes of a Rule 12(b) (6) motion to dismiss, [courts] do not have to take as true allegations based merely upon information and belief.' '" (quoting Smith v. City of Sumiton, 578 Fed.Appx. 933, 935 n.4 (11th Cir. 2014)). Plaintiff later claims "acute interstitial nephritis," "acute kidney injuries," "chronic kidney disease [,]" and "renal failure, also known as end-stage renal disease" [Id. ¶ 21]. By the time she pleads negligence, these problems have all been subsumed under the label "kidney injuries" [Id. ¶ 106].

There is thus simply no adequate causal connection to be had here. Plaintiff is essentially alleging that she has suffered some form of kidney injury, she once took some form of Nexium, research has shown that PPIs may have a negative impact on kidneys, and thus AstraZeneca did something wrong that caused Plaintiff's injury. For purposes of specific and proximate

cause, such conjecture is simply insufficient to survive a Rule 12(b)(6) motion. See Barrett Props., 316 Ga.App. at 509, 729 S.E.2d 621 ("A mere possibility . . . of causation is not enough . . . ."). This method of listing out the elements of negligence and drawing a wished-for conclusion is the very definition of "pure speculation or conjecture," id., and it does not constitute proper pleading.

## B. Strict Products Liability

As previously noted, Plaintiff pleads in a single count all three possible types of strict products liability—manufacturing, design, and failure to warn [Id. ¶ 107]. To state a claim for strict liability under Georgia law, "Plaintiff must show that 'the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.' O.C.G.A. § 51–1–11(b) (1). 'The existence of a defect is crucial, because a manufacturer is not an insurer against all risks of injury associated with its product.' " Goodson, 2011 WL 6840593, at *4 (quoting Giordano v. Ford Motor Co., 165 Ga.App. 644, 645, 299 S.E.2d 897 (Ga. Ct. App. 1983)).

Once again, as noted above, Plaintiff has a proximate cause problem that continues into her strict products liability claim. Furthermore, at no time does Plaintiff allege " 'any specific design or manufacturing defect [in the design of Nexium] that proximately caused Plaintiff harm.' " See Brazil, 249 F.Supp.3d at 1337, 2016 WL 484442, at *9 (quoting Henderson v. Sun Pharmaceuticals Industries, Ltd., 2011 WL 4024656, at *5 (N.D.Ga. June 9, 2011)). Even assuming that Nexium caused Plaintiff's "kidney injuries," she was taking it to treat "peptic disorders" [Doc. 12 ¶ 5], and she never alleges that it failed to act exactly as designed or manufactured for that purpose. Finally, as to failure to warn, this First Amended Complaint imputes knowledge to

AstraZeneca as to the dangers of PPIs without any facts to support her assertions of "reckless disregard" and "conscious decisions not to adequately warn" [Id. ¶ 110]. Indeed, Plaintiff relies on "multiple studies" conducted by various scientists and academic institutions, but of the approximately nine studies cited, only one predated Plaintiff's prescription for Nexium and as many as four are from the last three years [Id. ¶¶ 50–72]. Plaintiff thus wholly fails to establish what if any information AstraZeneca actually could have possessed and failed to disclose at the time she sustained her injury. The lack of any factual foundation for her claims bars Plaintiff from moving forward.

## C. Breach of Express and Implied Warranties

Plaintiff's third and fourth allegations—for breach of express and implied warranties—are also easily dismissed. As to any express warranty, Georgia law requires some form of "affirmation of fact or promise made by the seller to the buyer which relates to the goods," a "description of the goods," or a "sample or model" made part of the basis of the bargain. O.C.G.A. § 11–2–313. Plaintiff's failure to identify "any specific statements" upon which an express warranty could be based dooms this claim. See Goodson, 2011 WL 6840593, at *4–5.

As to any implied warranty, Plaintiff again provides no specifics, simply alleging that she and "her physicians relied on the skill, judgment, representations, and foregoing express warranties of Defendants" and these "warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended" [Doc. 12 ¶ 142]. There is no evidence as to what representations AstraZeneca may or may not have made; Plaintiff is simply pleading the ele-

ments of her desired claim, which does not meet the legal standard here.

### D. Fraudulent Misrepresentation and Omission

 Finally, Plaintiff alleges fraudulent misrepresentation. Under Georgia law, "[a] plaintiff asserting a fraud claim ... must establish five elements: (1) a false representation by the defendant; (2) scienter; (3) intention to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff[;] and (5) damage to the plaintiff." Brazil, 249 F.Supp.3d at 1339, 2016 WL 4844442, at *10 (citation omitted). Furthermore, when a party alleges fraud, they must meet the requirements of Federal Rule of Civil Procedure 9(b) to "state with particularity the circumstances constituting fraud." This means that Plaintiff "must plead facts as to time, place, substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Id. (citation omitted). This Plaintiff simply does not do.

As noted above, Plaintiff's First Amended Complaint is entirely-bereft of any specificity as to a statement that could constitute a representation. The sum and substance of her claim for fraudulent misrepresentation or omission is that AstraZeneca "fraudulently misrepresented that the daily use of Nexium was safe and effective," that it "made representations and failed to disclose material facts with the intent to induce" consumers to purchase Nexium [Doc. 12 ¶¶ 146, 148]. These statements constitute "[a] 'blanket allegation that 'defendants made representations' without any further specificity [which] is fatal to [a fraud] claim.' " Brazil, 249 F.Supp.3d at 1339, 2016 WL 4844442, at *10 (citations omitted).

### IV. Conclusion

For the reasons stated above, Plaintiff's First Amended Complaint [Doc. 12] must be dismissed and dismissed with prejudice. AstraZeneca put Plaintiff on notice of the issues with her first complaint, which Plaintiff appears to have actually made worse with her amended version. Plaintiff has presumably tried and failed to fix her pleadings and has shown no interest in substantively defending against the pending motion to dismiss; the Court sees no value in allowing Plaintiff a third pleading opportunity.

Therefore, AstraZeneca's motion [Doc. 25] is GRANTED and Plaintiff's First Amended Complaint [Doc. 12] is DISMISSED WITH PREJUDICE.

SO ORDERED, this 22 day of may, 2017.